DGB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION



NO. 7:24-CR-104-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL INFORMATION |
| ) | |
| BARRY DARNELL WHITE ) | |

The United States Attorney charges the following:

## INTRODUCTORY ALLEGATIONS

### The Clean Water Act

1. The Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., referred to as the Clean Water Act (CWA) was enacted by Congress to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. 33 U.S.C. § 1251(a). In addition, the CWA was enacted to prevent, reduce, and eliminate water pollution in the United States and to conserve the Waters of the United States for the protection and propagation of fish and aquatic life and wildlife, for recreational purposes, and for the use of such waters for public drinking water, agricultural and industrial purposes. 33 U.S.C. § 1252(a).

2. The CWA prohibits the discharge of pollutants into the waters of the

1

United States from any point source without a permit issued under the National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. § 1342. Except in compliance with such a permit, the discharge of any pollutant by any person is unlawful. *See* 33 U.S.C. § 1311(a). Under the CWA, the U.S. Environmental Protection Agency ("EPA") may delegate the authority to states to implement and enforce NPDES permits. North Carolina was delegated such authority in 1975.

3. The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. § 1362(6).

4. A "point source" means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *See* 33 U.S.C. §1362(14).

5. The term "Waters of the United States" means intrastate lakes, rivers, and streams, including intermittent streams, and wetlands, the use, degradation, or destruction of which would or could affect interstate or foreign commerce. *See* 40 C.F.R. §122.2.

2

## American Distillation, Inc.

6.  American Distillation, Inc. (ADI) was a chemical processing company located beside the Cape Fear River in Leland, North Carolina. The portion of the Cape Fear River adjacent to ADI constitutes navigable waters, and is thus a "Water of the United States."

7.  ADI was incorporated in 1992 to blend and market industrial grade ethyl alcohol. ADI's services included distillation, dehydration, reaction, carbon treating, and blending of various chemicals and products from partners across the United States. ADI's primary customer was Badische Anilin- und Sodafabrik (BASF) a German based company whose local headquarters are in Mcintosh, Alabama.

8.  ADI intakes large quantities of tert-Butyl alcohol (TBOH) yearly from BASF. ADI distilled TBOH down to a usable product for BASF to use. TBOH is a pollutant under the CWA because it constitutes a solid waste, chemical waste, and an industrial waste. During distillation, a byproduct was created and stored in an approximate 250,000-gallon storage tank, known as "Tank 14." Tank 14 regularly stored liquid wastewater that included—in addition to TBOH—tert-butyl hydroperoxide, isopropyl alcohol, and acetone mixed with water.

9.  ADI was required to properly dispose of TBOH byproduct according to its EPA-issued permit. ADI, however, beginning as early as in or about late 2019 up to and including the beginning of 2024, was accepting more TBOH and other

3

chemicals than it could legally and safely process and remove. To ensure operations did not come to a halt and realize maximum profit, ADI released TBOH byproduct from Tank 14 through a point source leading to the Cape Fear River. ADI management had informed some of its employees that if operations came to a halt, the company would suffer serious financial harm, potentially including dissolution.

### The Defendant

10. The Defendant, Barry Darnell White (hereinafter WHITE) was the Production Manager at ADI's facilities in Leland, NC. He led logistics at ADI, oversaw the movement of pollutants and various waste products within ADI, and supervised numerous other employees. Such logistics included the movement of chemicals from one tank to another, and the movements from tanker trucks in and out of ADI's facilities. WHITE reported directly to ADI's corporate management.

11. WHITE intentionally discharged the liquid from Tank 14—which contained TBOH and other chemicals—by connecting a hose to Tank 14, then turning a valve which initiated the flow of liquid from the tank. The hose drained into a nearby pipe that drained to an outfall that led directly to the Cape Fear River.

12. WHITE released approximately 2,500 gallons of liquid wastewater containing pollutants from Tank 14 during each discharge event, which occurred approximately five to six times a year beginning at least as early as 2020.

13. WHITE acted to promote the interests of ADI and the expectations of

4

his corporate management. WHITE and ADI management knew that NPDES did not have a permit to lawfully discharge wastewater into the Cape Fear River.

## THE CHARGE

14. The United States Attorney realleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs of this Criminal Information.

15. Beginning no later than in or about January 2020, the exact date being unknown, and continuing up to and including in or about January 2024, in the Eastern District of North Carolina, the Defendant, BARRY DARNELL WHITE, did intentionally discharge pollutants from a point source into a Water of the United States without and in violation of an NPDES permit.

All in violation of Title 33, United States Code, Sections 1311, 1319(c)(2)(A) and 1342.

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

MICHAEL F. EASLEY, JR
United States Attorney

BY: *[signature]*

DAVID G. BERAKA
Assistant United States Attorney